# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ELIZABETH FRANCIS
EILEEN SCHIEL,

     *Plaintiff*,

*v.*                        CASE NO. 12-CV-11470

COMMISSIONER OF          DISTRICT JUDGE AVERN COHN
SOCIAL SECURITY,        MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for supplemental security income ("SSI")

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12.)

Plaintiff Schiel was 21 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 22.) Plaintiff filed the instant claim on February 8, 2010, and January 4, 2010, alleging that her disability began on July 1, 2009. (Tr. at 85, 89.) The claim was denied at the initial administrative stages. (Tr. at 45.) In denying the claims, the Defendant Commissioner considered asthma and epilepsy (major or minor motor seizures) as possible bases of disability. (*Id.*) On July 18, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Gerald Freeman, who considered the application for benefits *de novo*. (Tr. at 5-17, 18-44.) In a decision dated September 22, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 14.) Plaintiff requested a review of this decision on November 28, 2011. (Tr. at 4.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 26, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On April 2, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative

review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D.    ALJ Findings

The ALJ applied the Commissioner's disability analysis described above and found at step one that Plaintiff had not engaged in substantial gainful activity since the application date. (Tr. at 10.) At step two, the ALJ found that Plaintiff's fatigue and headaches secondary to seizures, abdominal pain secondary to an ovarian cyst, and asthma were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 11.) At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. at 13.) The ALJ also found that Plaintiff was a younger individual, between the ages of 18 and 49, on the date the application was filed.

(*Id.*) At step five, the ALJ determined that Plaintiff retained the residual functional capacity to perform a limited range of unskilled medium work. (Tr. at 11-13.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 14.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated at the Thea Bowman Community Health Center from 2009 through 2010 for chills, flu symptoms, stomach pains, and an ankle sprain. (Tr. at 146-62.) Plaintiff's physical exams were normal. (*Id.*) On January 9, 2009, Plaintiff reported dizziness, headaches, imbalance, and uncontrolled seizures; Plaintiff's Dilantin prescription was increased. (Tr. at 156-57.) On January 14, 2010, it was noted that Plaintiff's asthma was controlled with medication. (Tr. at 151.) By February 15, 2010, it was noted that Plaintiff's epilepsy was stable and that the Dilantin prescription would be renewed. (Tr. at 149.) It was also noted that Plaintiff's pain medication for her ovarian cyst could cause seizures, so her prescription would be changed. (*Id.*)

On May 19, 2010, Plaintiff was examined at the request of Disability Determination Services ("DDS") by Sonia Ramirez, M.D. (Tr. at 163-69.) Plaintiff's examination was "unremarkable" and Dr. Ramirez noted that she was "not able to determine the cause of [Plaintiff's] weakness. Physically, she did not appear to be weak. I think she should be evaluated by a psychiatrist." (Tr. at 164.)

Plaintiff was also treated for abdominal pain, pelvic inflammatory disease, bacterial vaginosis and urinary tract infection at the emergency room of the Henry Ford Wyandotte Hospital in July 2011. (Tr. at 171-81.)

A Physical Residual Functional Capacity Assessment ("RFC") completed by Lloyd Jones, Single Decision Maker ("SDM"), on June 3, 2010, found that no exertional, postural, manipulative,

visual, or communicative limitations were established. (Tr. at 47-50.) The assessment also concluded that Plaintiff should avoid even moderate exposure to fumes, odors, gases, and hazards. (Tr. at 50.)

Plaintiff testified at the administrative hearing that she completed high school in December 2007. (Tr. at 23.) Plaintiff indicated that her seizures began "[r]ight after I graduated high school." (Tr. at 23.) Plaintiff stated that she was at home when the first seizure occurred and that she was hospitalized for five days. (Tr. at 23-24.) Plaintiff indicated that her doctors suggested that the seizures occurred after "the blow to the head I experienced [on March 23, 2007,] during an altercation with – I was attacked and raped at a certain time, and I was knocked unconscious." (Tr. at 34.) Plaintiff added that she was discharged with a prescription for Dilantin. (Tr. at 24.) Plaintiff testified that during the seizures she shakes, convulses, and that she has bitten her tongue, hit her head and collapsed. (*Id.*) Plaintiff testified that she has a seizure "[a]lmost once a week." (*Id.*) Plaintiff testified that her medication makes her dizzy until about 11:00 a.m., when it wears off, so that her normal day begins at 11:00 a.m. and ends around 11:00 p.m., when she takes her medicine again. (Tr. at 26.)

Plaintiff testified that she attends church "[e]very Sunday." (Tr. at 29.) Plaintiff stated that she can only stand for five minutes without getting dizzy, but then conceded that her walk into the hearing room took longer than that. (Tr. at 30.) Plaintiff added that she only has about two good days per week. (*Id.*)

When the ALJ asked for the records from the hospital to confirm the 2007 assault, Plaintiff's counsel indicated he was "going to" get the records. (Tr. at 37.) The following exchange took place:

> ALJ: Okay, good. I'm going to ask you to do that. What I would also like you to submit now, with those records, is a memorandum indicating the aspects of that

case, the medical evidence that documents that conditions that are involved here. Because we have a lot of testimony, and I have no reason to question the voracity [sic] of this young lady, but I need, as you well know, objective medical evidence that supports the medical basis for disability.

ATTY: I understand we need corroboration.

ALJ: That's right.

ATTY: Okay.

ALJ: That's right. I'm going to give you 30 days because it may be a problem to get the records from DMC.

ATTY: If I told you that I would have the records in 30 days I would be telling you an untrue statement.

ALJ: Thirty days you can't get them.

ATTY: No, I can't.

ALJ: Why?

ATTY: Because I am starting a very complex medical malpractice case in 10 days, involving a boy who attempted to hang himself.

ALJ: Have somebody from your office get the records. Just send it out and get them, okay?

ATTY: We will do the best - -

ALJ: Right.

ATTY: - - that we can - -

ALJ: Right, because I can't keep this record open - - after me - - let me assure you I cannot keep records open. Thirty days - -

ATTY: Okay.

ALJ: - - is the max that they allow us.

ATTY: I have a medical service that will get the records - -

ALJ: Good.

ATTY: - - as soon as possible. Hopefully I will have cooperation from my client to sign an authorization, to get the records, so we can get the job done.

ALJ: We could do that today.  We'll give you an authorization right now and she can sign it right here and there.

ATTY: Fine, we'll do it.

ALJ: We'll make sure of that, okay. Good.

CLMT: Yes, sir.

ATTY: Okay.

(Tr. at 37-39.) Then at the close of the hearing, when Plaintiff's counsel asked for 45 days, the ALJ responded, "I can only give 30 on the record, but I'll give 45 days." (Tr. at 42.) The attorney thanked the ALJ. (*Id.*)

The ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background who

> has problems related to a - - what's been defined as a mild condition of asthma, but she does use inhalers, takes Albuterol if available. She has a seizure disorder or we call it slash [phonetic] epilepsy. She's been prescribed Ambien to help her sleep as well. Unfortunately, she's run out of funds to have prescription coverage, or seeing a medical person short of various emergency rooms. She has been on Vicodin and Motrin 800s beforehand and just been prescribed Ultram to deal with her abdominal pain from her recent ER, but again, she has no funds to deal with that. The young lady indicates that she has seizures approximately once a week. The [INAUDIBLE] history in the past are much more frequent. But I want you to assume that I find that she has a RFC, residual functional capacity, of medium, because there appears to be no basic problems exertionally that would restrict her. But she is to, because of her epileptic condition, she is to avoid work around heavy machinery, use of power tools, avoiding heights. Furthermore, she is to have a job that would require minimal focus or concentration because of memory problems that she's testified to. She is to have the customary 15-minute break every two hours, 45-minute break at lunchtime.

(Tr. at 40-41.) The VE responded that such a person could perform the 5,000 dining room attendant or busser jobs, and  the 6,000 hand packager jobs that exist in Southeastern Michigan.

(Tr. at 41.) When asked whether the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"), the VE responded that it did not. (*Id.*)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform a limited range of medium work. (Tr. at 11-13.) "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that she is "entitled to a 'sentence four' remand" because she "has not had the opportunity to fully develop the record." (Doc. 9 at 3.) Plaintiff argues that although she was given additional time to produce records relating to her post-traumatic stress disorder caused by the assault in 2007, Plaintiff "could not remember which facility treated her,

and could not produce the record." (Doc. 9 at 4.) Plaintiff further argues that the ALJ "should have required the claimant to have a Psychiatric Evaluation" in light of the examining physician's recommendation for the same. (Doc. 9 at 4-5.)

### a.    Complete Record

I first note that the "burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). "Only under special circumstances, when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ have a special duty to develop the record." *Rise v. Comm'r of Soc. Sec.*, No. 99-6164, 2000 WL 1562846, at *2 (6th Cir. 2000) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Here, no special circumstances existed because Plaintiff was represented by an attorney at the administrative hearing. Accordingly, I find no exceptional reason to relieve Plaintiff of her burden to prove disability and to furnish evidence to support that conclusion.

I note that the ALJ in the instant case tenaciously encouraged Plaintiff's counsel to obtain any records substantiating the effects of the 2007 assault and the ALJ extended the deadline for doing so beyond the usual time. (Tr. at 37-39, 42.) Even though the ALJ had no duty to develop the record, I suggest that he took more effort to assure a complete record than was either necessary or required.

### b.    Request for a Sentence-Four Remand

Remand under sentence four of 42 U.S.C. § 405(g) is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the

combined effect of impairments or failed to make a credibility finding. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Since I suggest that the ALJ did not commit any error regarding development of the record, I further suggest that remand under sentence four would not be appropriate.

To the extent that Plaintiff actually seeks a sentence-six remand rather than a sentence-four remand, I suggest that Plaintiff cannot meet that standard either.

> Remands under both sentence four and sentence six of § 405(g) can involve the taking of additional evidence. Under sentence six, a district court, before making a final judgment, may order the Secretary to consider additional evidence because a party presents material evidence to the court that was not previously available. Under sentence four, the court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place.

*Faucher*, 17 F.3d at 175.[2] Since Plaintiff does not seek a judgment but rather seeks remand to "further develop the record," Plaintiff may actually be seeking remand under sentence six. *Id.* ("a remand pursuant to sentence four of § 405(g) is a post-judgment remand," as opposed to a remand "pursuant to sentence six of § 405(g), [which] is a pre-judgment remand").

Sentence six of 42 U.S.C. § 405(g) allows the district court to remand in light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Melkonyan v. Sullivan*, 501 U.S. 89, 100, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). The Sixth Circuit has long recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure

---

[2]Other courts have questioned whether a remand under sentence four may include the taking of additional evidence where the requirements of sentence six are not met. *See, e.g., Jones v. Astrue*, 650 F.3d 772, 776 (D.C. Cir. 2011) (collecting cases and noting that the Supreme Court has not ruled on the issue).

to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster*, 279 F.3d at 353). In addition, "such evidence is 'material' only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

"'Good cause' is shown for a sentence-six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding that evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

In the instant case, the medical evidence Plaintiff would like to include consists of medical records regarding a 2007 assault and a psychiatric evaluation that Plaintiff would like to undergo but which has not yet been completed. (Doc. 9 at 4-5.) The medical evidence of the 2007 assault existed at the time of the hearing and therefore is not new. The psychiatric evaluation that Plaintiff would like to obtain could be considered new, once generated, but no good cause has been shown for the failure to obtain it prior to the hearing. I therefore suggest that even if Plaintiff were seeking a remand under sentence six, that request should also be denied.

### 3.    Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: March 28, 2013                    United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  March 28, 2013                    By____s/Patricia T. Morris_____
                                                        Law Clerk to Magistrate Judge Binder